## In re Parole. No. 1

UMSTED, Special Deputy Attorney General, February 26, 1943.—This department is in receipt of your communication requesting advice concerning the various subjects hereinafter enumerated.

I

(a) Does the Board of Parole have authority under the law to parole prisoners serving flat sentences of over two years in county institutions?

(b) Does the Board of Parole have authority under the law to parole prisoners serving general sentences at male industrial schools and the industrial home for women where the maximum sentence which could be imposed for the crime for which the prisoner was convicted equals or exceeds two years?

II

Where a parolee during parole is convicted of another crime and subsequently sentenced therefor, does the Board of Parole have authority under the law to reparole the prisoner on his first sentence or must the prisoner serve the maximum of his first sentence in

full either before starting to serve the second sentence or upon serving the second sentence?

## III

What agency or agencies should bear the expenses incurred in returning parole violators to Pennsylvania penal institutions: (a) Penitentiaries; (b) industrial schools and the industrial home; (c) county prisons and other county institutions?

We will answer these questions seriatim.

First, it appears, necessary, however, to give some history of the parole system in Pennsylvania in order that a clearer picture may be presented.

Before 1909 this Commonwealth had no system of parole as we now understand that principle of penology. The Act of May 10, 1909, P. L. 495, 61 PS §291 et seq., was the first law directly bearing upon this subject. Under its terms a parole system was set up for prisoners incarcerated in the two penitentiaries.

This act in brief provided that the board of inspectors (later board of trustees) should call before them at regular meetings prisoners having served the minimum terms of their indeterminate sentences, and that they be given an opportunity to apply for their release on parole.

The board was required to report to the Governor who was authorized to parole in certain cases with the proviso that if during any parole a convict, so released, should be convicted of any crime punishable by imprisonment under the law of this Commonwealth he should in addition to such crime be compelled to serve the remainder of the term (without commutation) which he would have been compelled to serve but for the commutation of the sentence provided for in the act. However, in cases except those where only a payment of a fine was imposed, the Governor had no right to execute any rights granted under the act until after hearing and recommendation of the Board of Pardons.

The same act under its early sections gave to the courts of this Commonwealth, in certain cases, the right after a conviction to suspend sentence and place the defendant on probation upon terms and conditions discretionary with the court.

In the case of parole from a penitentiary, section 14 of the act provided for violation that the prisoner should be returned to the penitentiary for a period equal to the unexpired term of his sentence unless sooner released on probation or pardoned absolutely.

Next was passed the Act of June 19, 1911, P. L. 1055, 61 PS §302 et seq. This act with some enlargement reënacted the legislation of 1909. Its section 10, as amended by the Act of June 3, 1915, P. L. 788, sec. 1, 61 PS §305, provided that, in addition to the penalty imposed for a crime committed during a period of parole, the prisoner should be required to serve in the penitentiary to which he had been originally committed the remainder of the term (without commutation) which such prisoner would have been compelled to serve but for the commutation authorized for parole. Depending on the second sentence,[1] the completion of the first one was either to precede or succeed the second. The act contained the same proviso with regard to the duties of the Board of Pardons as did the Act of 1909.

On the same date was approved the Act of June 19, 1911, P. L. 1059, later amended by the Acts of May 5, 1921, P. L. 379, and May 11, 1923, P. L. 204, 61 PS §314. This law pertained to the authority of the courts of quarter sessions to parole convicts confined to the county jail, house of correction, or workhouse in their respective districts. It contained not the power to

---

[1] If the second sentence was in the same institution as had been the first then the sentence would be served in sequence. But if the second sentence was in a different institution it was required to be served before the balance of the old sentence.

parole "without commutation", but the power to parole, recommit, and reparole.

Release from imprisonment in male industrial schools then known as reformatories was fixed by the Act of April 28, 1887, P. L. 63, 61 PS §485, and authority on this subject was given to the board of managers (now board of trustees).

The Act of July 25, 1913, P. L. 1311, as amended by the Act of May 14, 1925, P. L. 697, the latter amended by the Act of June 22, 1931, P. L. 859, 61 PS §566, provided for general sentences of women to the industrial home and where they were over 25 years of age permitted their parole under the Act of June 29, 1923, P. L. 975, amending the Act of June 19, 1911, P. L. 1055, supra. Women under 25 years of age were paroled by the board of trustees of the institution.

Briefly, then, up until the creation of the Pennsylvania Board of Parole by the Act of August 6, 1941, P. L. 861, 61 PS §331.1 et seq., the authority to parole prisoners serving terms in State penitentiaries was in the Governor through the Board of Pardons. The authority to parole inmates over 25 years of age at the industrial home for women was placed under the same jurisdiction. The board of trustees of male industrial schools could parole prisoners incarcerated in those institutions, as could the trustees of the industrial home parole its prisoners who were under 25 years of age. The courts had jurisdiction in the matter of parole of persons serving sentences in county jails, houses of correction, and in workhouses.

The Act of August 6, 1941, supra, creating the Pennsylvania Board of Parole as of June 1, 1942, gave it exclusive jurisdiction over paroles with the limitation that it could not act where the maximum sentence was less than two years nor could it parole until after the expiration of a minimum sentence.[2]

---

[2] See limitations in sections 21 and 31 which are not pertinent to this opinion.

I

(*a*)  Does the Board of Parole have authority under the law to parole prisoners serving flat sentences of over two years in county institutions?

(*b*)  Does the Board of Parole have authority under the law to parole prisoners serving general sentences at male industrial schools and the industrial home for women where the maximum sentence which could be imposed for the crime for which the prisoner was convicted equals or exceeds two years?

Flat sentences are those in which a definite term is prescribed without any minimum sentence.

General sentences are those in which no time is fixed by the court.

Sections 17 and 21 of the Act of August 6, 1941, P. L. 861, 61 PS §331.17 and §331.21, provide as follows:

"Section 17.  The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided. . . . Provided, however, That the powers and duties herein conferred shall not extend to persons sentenced for a maximum period of less than two years, and nothing herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years:  And provided further, That the period of two years herein referred to shall mean the entire continuous term of sentence to which a person is subject, whether the same be by one or more sentences, either to simple imprisonment or to an indeterminate imprisonment at hard labor, as now or here-

after authorized by law to be imposed for criminal offenses.

"Section 21. The board is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby. If at the time a person is paroled he has been imprisoned for a period in excess of the minimum term of imprisonment to which he shall have been sentenced, . . .[3] The power to parole herein granted to the Board of Parole may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Pardon Board in a sentence which has been reduced by commutation. Said board shall have the power during the period for which a person shall have been sentenced to recommit one paroled for violation of the terms and conditions of his parole and from time to time to reparole and recommit in the same manner and with the same procedure as in the case of an original parole or recommitment, if, in the judgment of the said board, there is a reasonable probability that the convict will be benefited by again according him liberty and it does not appear that the interests of the Commonwealth will be injured thereby."

Section 17 above clearly extends to the Board of Parole exclusive jurisdiction in all parole cases whether the prisoner be in a penitentiary, reformatory (better termed, industrial school), county jail, workhouse, or

---

[3] The portion here deleted was declared unconstitutional by the Supreme Court of Pennsylvania in Commonwealth ex rel. v. Cain, 345 Pa. 581 (1942).

house of correction providing he is serving a maximum sentence or sentences of two years or more.

Thus, the legislature has taken away from the courts, the Pardon Board, and the trustees of penitentiaries all authority to parole except where the prisoner's maximum sentence or combined sentences do not aggregate two years.[4] And the proviso in section 21 that the power of parole may not be exercised at any time before but only after the expiration of the minimum term of imprisonment obviously does not limit the jurisdiction of the board over prisoners in the various State and county institutions but merely prescribes a limitation upon it where a minimum sentence has been fixed by the court. Clearly, if the court does not fix a minimum sentence then there is no limitation as to the time within which after incarceration the prisoner may be released upon parole.

In the case of a flat sentence of two years or more, i. e., a sentence for a definite period of time, the prisoner may be paroled immediately upon the commencement of his term. Likewise in case of a general sentence, i. e., where a prisoner is committed to an industrial school without any definite time being fixed by the court, his parole may be commenced on the day he enters the institution, provided of course that the maximum punishment fixed by the legislature for the offense of which the prisoner was guilty equals or exceeds two years.

However, the Supreme Court speaking through Mr. Justice Stern in Commonwealth ex rel. v. Cain, 345 Pa. 581 (1942), at page 589 says:

"It is only if the duration of the sentence is not affected that a parole does not infringe upon judicial power; therefore we are of opinion that the portion of section 21 which attempts to give to the board the

---

[4] Note sections 21 and 31 referred to supra.

power to extend the period of parole beyond the maximum term imposed by the sentence, and section 24 which attempts to give to the board the power to discharge a parolee before the expiration of the parole period, are unconstitutional."

Therefore, while in an indeterminate sentence, i. e., one with a minimum and maximum term, the board may parole at the expiration of the minimum term, and in a flat sentence and a general sentence [5] may parole immediately upon incarceration, it may never extend the parole beyond the term of the maximum sentence fixed by the court in indeterminate and flat sentences or by the legislature in a general sentence. Nor can the board terminate the parole before the expiration of the maximum sentence fixed by the court in the first two instances and by the legislature in the last instance.

## II

Where a parolee during parole is convicted of another crime and subsequently sentenced therefor, does the Board of Parole have authority under the law to re-parole the prisoner on his first sentence or must the prisoner serve the maximum of his first sentence in full either before starting to serve the second sentence or upon serving the second sentence?

For the answer to this question we must look to the law as it existed before the enactment by the legislature of the current parole law, and to the interpretations which have been given it by our courts, keeping in mind at all times that the Act of August 6, 1941, reposes in the Board of Parole, as above demonstrated, exclusive jurisdiction of that subject matter within the modest limitations which it imposes. We must re-

---

[5] The Act of April 28, 1887, P. L. 63, sec. 6, 61 PS §485, fixed as the duration of a maximum general sentence the maximum period fixed by the legislature for the offense of which the prisoner has been convicted and sentenced.

member that, with the exception of those undergoing sentence of less than two years, all prisoners in Pennsylvania are brought under the jurisdiction and control of the Board of Parole; that, with the exception above noted, the legislature has formulated a complete and comprehensive penological plan along modern and realistic lines, and in construing that legislation we are obliged to start with the premise that the subject of parole in all its phases has been completely covered.

Insofar as it concerns prisoners who were paroled from a penitentiary, under the Act of June 19, 1911, P. L. 1055, and its amendments, if they committed offenses punishable by imprisonment while on parole, they were obliged to serve both the term of the second sentence and the full term of the first one because in that act authorizing the parole of prisoners from the penitentiary no authority was given to reparole.

In the case, however, of prisoners paroled from a county jail by the court, who committed offenses during parole, there was authority in the court under the Parole Act of June 19, 1911, P. L. 1059, and its amendments, not only to parole but to reparole, to commit, and recommit.

This subject was dealt with in considerable detail in Commonwealth v. Ripka, 37 D. & C. 315 (1940), and we quote from pages 318 and 319 of the opinion as follows:

"It is true that paroles from State penitentiaries and county institutions are regulated by different acts, the latter being governed by the Act of June 19, 1911, P. L. 1059, and that they do not contain the same provisions. . . . The first of these acts, which regulates paroles from penitentiaries, is rather elaborate in its provisions. The second lays down no rules whatever for the regulation of paroles from the county prison. It is but one paragraph in length, and, except as subsequently amended by the Act of May 11, 1923, P. L.

204, to prescribe regulations for the hearing of petitions for parole, it merely confers upon the quarter sessions courts the power, 'after due hearing, to release on parole any convict confined in the county jail, house of correction, or workhouse' of its district, and 'to recommit to jail, workhouse, or house of correction on cause shown by such probation officer that such convict has violated his or her parole, and to reparole in the same manner and by the same procedure as in the case of the original parole if, in the judgment of said court, there is a reasonable probability that the convict will be benefited by again according liberty to such convict, and also to again recommit for violation of such parole.'

"There are no provisions here, such as in the act relating to penitentiaries, prescribing what shall be done upon a violation of parole by a parolee, except that he may be recommitted and reparoled in the discretion of the court. We think, therefore, that the only reasonable conclusion to be reached from this complete absence of express legislative declaration upon the subject in the second act is that the legislature considered that, by the previous act relating to the penitentiary, it had given to the word 'parole' a connotation sufficiently fixed and definite, at least as to basic principles, to render its further definition unnecessary when used in subsequent legislative enactments. In this respect we think that the acts should be interpreted similarly in order that the administration of parole may be uniform, and shall differ only in those particulars in which a legislative intent to distinguish between paroles from penitentiaries and from local county institutions is apparent or reasonably and necessarily to be inferred.

"This being so, we find no statutory authority for holding the general consequences of a parole violation to be different in the case of prisoners sentenced to the county prison from those prescribed for penitentiary

prisoners, except that, in the former case the power is given to the courts to reparole after commitment for violation of parole, whereas this power has not been conferred upon the Board of Pardons, the paroling authority in the case of penitentiary prisoners."

And it was with this case before it, as well as those cited in the foregoing opinion, to wit, Commonwealth ex rel. v. Smith, 323 Pa. 89 (1936), and Commonwealth ex rel. v. Smith, 118 Pa. Superior Ct. 250 (1935), that the legislature acted favorably upon the Parole Act of 1941, and stated in its section 17 as follows:

"The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided."

Therefore, the construction heretofore placed upon the words "commit and recommit" is applicable to the interpretation of the present law: Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533. The authority which was previously in the court to reparole on a first sentence after conviction of a second offense during parole as to prisoners in the county jail is now vested in the Board of Parole as to all prisoners in State or county institutions serving maximum sentences over two years or more.

Specifically, the Board of Parole does have authority to reparole a parolee on his first sentence even after he has been convicted of a second offense during parole and it may do this either before or after the prisoner has served the minimum term of his second sentence or, if no minimum has been fixed, has started serving his second sentence.

## III

What agency or agencies should bear the expenses incurred in returning parole violators to Pennsylvania penal institutions: (a) Penitentiaries; (b) industrial schools and the industrial home; (c) county prisons and other county institutions?

The Act of June 26, 1939, P. L. 1080, 61 PS §309, provides in part as follows:

"That whenever it shall appear to the State Board of Pardons that a person who has been sentenced under the provisions of the act, approved the nineteenth day of June, one thousand nine hundred and eleven . . . and its amendments, and released on parole by commutation containing a condition that the convict shall be subject to the terms of said act, has violated the terms of his or her parole, it shall cause a warrant to be issued for the arrest of said person, . . . [and] shall notify the Department of Justice or the Pennsylvania Motor Police to send an officer to return him to said penitentiary. All the necessary expenses incurred by such officer in returning such convict to the penitentiary shall be borne by the penitentiary to which he is returned, which expenses shall be refunded to the Department of Justice or the Pennsylvania Motor Police, as the case may be, whose officer or agent makes such return."

The Act of May 11, 1929, P. L. 1183, as amended by the Act of May 11, 1931, P. L. 109, 61 PS §521, provides for the return of parole violators to industrial schools and contains the following:

"The cost of executing such warrant shall be paid by the board of trustees."

The Act of July 25, 1913, P. L. 1311, sec. 27, 61 PS §577, with regard to the State industrial home for women, relating to the return of parole violators, provides as follows:

". . . cost of executing the said warrant and returning the prisoner to be paid by the board of managers [now Board of Trustees]."

The Act of June 19, 1911, P. L. 1059, as amended, 61 PS §314, pertaining to the right of the courts to parole prisoners, contains no provision as to the payment of the cost of returning a parole violator to prison. It follows, then, that in such instances, the prisoners having been committed by the county judge, maintained by the county, paroled by the county judge, and recommitted by the county judge, the cost therefor falls upon the county.

To sum up, before the creation of the Board of Parole the costs of returning parole violators were borne as follows: (a) Prisoners from the penitentiary by the trustees of the penitentiary; (b) prisoners from industrial schools and the industrial home by the trustees of the industrial schools and the industrial home; (c) prisoners from county jails, workhouses, and houses of correction by the county where the prisoners were originally convicted.

The present parole law makes no provision for the payment of the costs for returning parole violators. Consequently, those costs must fall on the authorities heretofore made liable for them as above indicated.

Since the Board of Parole has exclusive jurisdiction and control of the parole system in Pennsylvania in cases involving maximum sentences of two years or more, then it is responsible for the return of such parole violators as are under its care. In the exercise of its duties and functions, it becomes a practical necessity for the board in the first instance to defray the expenses of returning parole violators. This, however, does not relieve the various authorities ultimately responsible for these costs from their payment.

Because there is no provision in the law for reimbursing the Board of Parole for such expenditures, the

initial cost of returning parole violators must be met from the board's appropriations. The various agencies above designated as ultimately liable for these costs advanced by the Board of Parole should be billed accordingly and the funds in reimbursement collected by the Department of Revenue for the account of the General Fund: The Fiscal Code of April 9, 1929, P. L. 343, art. II, sec. 206, 72 PS §206(h); Act of May 6, 1927, P. L. 848, sec. 1, 72 PS §3601.

We are of the opinion and you are accordingly advised:

### I

(a) The Board of Parole does have authority under the law to parole prisoners serving flat sentences of over two years in county institutions.

(b) The Board of Parole does have authority under the law to parole prisoners serving general sentences at industrial schools and in the industrial home where the maximum sentence which could be imposed for the crime of which the prisoner was convicted equals or exceeds two years.

### II

Where a parolee during parole is convicted of another crime and subsequently sentenced therefor, the Board of Parole does have authority under the law to reparole the parolee on his first sentence.

### III

The expenses incurred in returning parole violators to Pennsylvania penal institutions, county and State, are initially upon the Board of Parole and payable out of its appropriation. These costs, however, may be collected by the Department of Revenue for the General Fund: (a) In the case of prisoners from the penitentiary—from the trustees of the penitentiary; (b) in the case of prisoners from industrial schools and the industrial home—from the trustees of the

industrial schools and the industrial home; (c) in the case of prisoners from county jails, workhouses, and houses of correction—from the county where the prisoners were originally convicted.

